[S. F. No. 9586. In Bank.—December 1, 1922.]

## C. W. CLARKE CO. (a Corporation), Respondent, v. T. B. WALKER, Appellant.

[S. F. No. 9587. In Bank.—December 1, 1922.]

## C. W. CLARKE CO. (a Corporation), Respondent, v. T. B. WALKER, Appellant.

[1] AGENCY—PURCHASE OF PROPERTY—SCOPE OF AUTHORITY.—In the ordinary course of affairs, when one person employs another to purchase property from a third person for him for a commission, the authority conferred is merely that of acting as an intermediary or as a channel for the purpose of effecting a direct exchange of property between the present owner and the prospective purchaser, and as a general rule there is no intention to authorize the intermediary to intervene as a separate unit in the transfer of title or to recognize him as a separate individual in the transaction, and to insure proper protection against fraud, it will be presumed that the ordinary course of business has been followed in the absence of clear evidence to the contrary.

[2] ID.—CONTRACT FOR PURCHASE OF LAND — CONSTRUCTION OF. — A letter written by a prospective purchaser of certain indemnity school land to a person engaged in the business of representing individual applicants for the purchase of such land before the land offices, expressing a desire to purchase the land from the applicant or his assigns and authorizing such person to arrange for the purchase price and to retain the difference between what he would have to pay for the land and a specified sum per acre, declaring any profit made should be in lieu of any "commission" for "services," authorized such person merely to act as an intermediary and not to purchase the land and resell it to the purchaser.

[3] ID.—ASSIGNMENTS—FAILURE TO OBJECT—ABSENCE OF ESTOPPEL.— Under such a contract providing if the cost of the land were less than a specified sum per acre, the agent, or his assigns, could claim the difference as compensation, the purchaser was not estopped, in an action by the agent's assignees to recover the purchase price, from claiming that the agent was a mere depositary in receiving the moneys for the purchase of the land, by failing to object when notice of the assignments of moneys due or that might become due "on account of any services theretofore rendered" by the agent were served upon him.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George E. Crothers, Judge. Reversed.

The facts are stated in the opinion of the court.

Arthur W. Bolton for Appellant.

Peter J. Crosby, Crosby, Naus & Crosby and Stanley R. Sterne for Respondent.

LENNON, J.—Arising out of the same transaction, differing only in inconsequential details and presented upon identical briefs, the two above-entitled cases involve the same questions of law and may be considered in a single opinion.

In the year 1902 the state of California had selected 18,000 acres of land in Modoc and Shasta Counties as indemnity school lands. Thirty-seven different persons had applied to the state for these lands in tracts not exceeding 640 acres each. The applications had been approved by the state surveyor-general, payments in full had been made to the state, and the register of the state land office had issued to each applicant a certificate of purchase for the land described in his application, reciting that patent would issue to the person named therein, or his assignee, after the lands had been confirmed to the state by the United States.

One of these applicants was Wm. L. Crayton, who received his certificate of purchase in April, 1902. Concerning the land covered by this certificate of purchase Thomas B. Walker, defendant and appellant herein, wrote the following letter in the fall of 1902:

"Mr. John A. Benson,
    "San Francisco, Cal.
"Dear Sir:
    "I desire to purchase from Wm. L. Crayton or his assigns the following land, to-wit: All of Sec. 21, T. 42 N., R. 7 E., M. D. M., and containing 640 acres, at a price not exceeding three dollars and seventy-five cents an acre, which amount I agree to pay for the said land, in the manner and at the times hereinafter stated.
    "It is understood that the land has been purchased by said Wm. L. Crayton from the State of California and the

latter holds and owns a full paid up certificate of purchase therefor, the title to which is based upon a State indemnity school land selection now pending before the General Land Office awaiting the approval of the Secretary of the Interior.

"You may make your own contract with said Wm. L. Clayton and buy the land as cheaply as possible, and if you obtain the same for less than three dollars and seventy-five cents an acre, you may retain and have the difference between what you have to pay for the land and three dollars and seventy-five cents an acre, any profit that you may make in this matter shall be in lieu of any commission or compensation from me to you for your services herein.

"I offer to pay for the land in the following manner, to-wit:

"Upon the delivery to me of the State certificate of purchase on which full payment has been made to the State of California, together with assignment of said certificate of purchase or a grant deed to the land, described in such certificate, I will pay to you the sum of One Dollar and Fifty cents an acre.

"Whenever the said land or any part thereof is listed to the State by the Secretary of the Interior, I will pay to you the further sum of One Dollar and seventy-five cents an acre for the land so listed.

"Whenever a patent shall be issued by the State of California to Wm. L. Crayton or his assigns for the said land or any portion thereof, I will pay to you the sum of fifty cents an acres for the land so patented.

"I desire it expressly understood that I am *not* to pay any commission or other expenses which will make the land cost more than three dollars and seventy-five cents an acre.

"Yours very truly,

"T. B. WALKER."

Forty similar letters were written and delivered by Walker to Benson at the same time, varying only in the names of the applicants and description of land. Benson, who for years was engaged in the business of representing individual applicants for the purchase of public lands before the federal and state land offices, accepted Walker's proposition and carried it into effect. This appears from the following allegation of the complaint, which the trial court

found to be true, to wit: "Said contract was accepted by said Benson, who thereafter purchased the said land from said certificate holders above named for and on behalf of said defendant." Benson then delivered to Walker the said certificates of purchase, together with instruments in writing, signed by the certificate holders, assigning the said certificates and granting the land covered by the same to the defendant. Upon the delivery of the certificates and assignments Walker paid Benson the sum of $1.50 an acre, as stipulated in the contract.

In the month of March, 1903, Benson notified Walker that he had assigned to F. A. Hyde an undivided one-half of any moneys that were then due or might become due from Walker to Benson by reason of any existing contract. On the same day Hyde and Benson notified Walker that they had assigned to C. W. Clarke their right to any moneys which were then due from Walker to them by reason of any existing contract. C. W. Clarke, in turn, assigned to C. W. Clarke Co., the plaintiff herein. Benson died in 1910.

Owing to a controversy which arose in the year 1903 over the listing of state indemnity school lands to the state of California, the listing of the lands referred to in the Walker letters did not take place until the year 1917. Shortly thereafter patents were issued by the state to the certificate holders. The sums of $1.75 and 50 cents per acre, which Walker agreed to pay upon the listing and patenting, respectively, of the lands, have never been paid and the present suits for the recovery thereof are brought by C. W. Clarke Co. Defendant Walker appeals from a judgment adverse to him.

Defendant interposed the defense that Benson was employed as a broker or agent for Walker and, therefore, was to receive the moneys for the purchase of the land in the capacity of a depositary. If this view of the case be correct, then Benson cannot, by his own arbitrary assignment, and without the consent of the vendor, compel Walker to pay to another and different person, nor can such an assignee of Benson come into court and collect *for his own use* the money which Benson was to receive as a depositary only. Upon Benson's death the vendor alone could enforce the obligation of Walker to pay for the land and Benson's assignee can recover only the difference, if any exists,

between the amount which Walker agreed to pay for the land and the price for which Benson obtained the said land, which sum represents Benson's commission. There is no evidence whatever of the vendor's consent to the assignments or of the purchase price of the certificates, plaintiff having relied upon the theory that the contract shows that Walker dealt with Benson, not as agent, but as a principal, authorizing Benson to purchase the land and resell to Walker, and that the moneys now sued for were due to Benson as vendor of the land.

[1] The principal issue, therefore, is the interpretation to be accorded the contract hereinbefore set forth. In the ordinary course of affairs, when one person employs another to purchase property from a third person for him for a commission, the authority conferred is merely that of acting as an intermediary or as a channel for the purpose of effecting a direct exchange of property between the present owner and the prospective purchaser. As a general rule there is no intention to authorize the intermediary to intervene as an independent unit in the transfer of title or to recognize him as a separate individual in the transaction. To insure proper protection against fraud, it will be presumed that the ordinary course of business has been followed in the absence of clear evidence to the contrary. We are of the opinion that all of the evidence in the present suits tends to support this presumption.

[2] The contract itself, while somewhat ambiguous, contains strong indications that Benson was authorized to act merely as agent. Defendant expresses a desire to purchase from "Wm. L. Crayton or his assigns," but says nothing about purchasing from Benson; the contract provides that Benson may arrange for the purchase price and may "*retain and have* the difference between what you have to pay for the land and three dollars and seventy-five cents an acre," the necessary inference being that the balance of $3.75 per acre paid by Walker shall not belong to Benson, but to the persons from whom the certificates were obtained; the contract refers to Benson's "services" for Walker in obtaining the land for him and provides for a "commission." The phrase "you may make your own contract with said Wm. L. Crayton" obviously was not intended as an authorization to Benson to purchase in his own behalf;

the context in which it appears demonstrates that its meaning is limited to the fixing of the amount of the purchase price.

Moreover, by the conduct of the parties the contract was interpreted as one of agency. Thus, the written assignment of the certificates and grants of land were made out by the certificate holders directly to Walker; the complaint itself alleges, and the court found, that Benson purchased "for and on behalf of" Walker; Clarke gave Walker the following notice of the assignment from Hyde and Benson to himself: "You are hereby advised that on the 24th day of March, 1903, J. A. Benson assigned to F. A. Hyde an undivided one-half of any moneys that may be or become due on any account whatever by reason of any *existing contract between said Benson and yourself for any services heretofore rendered by said J. A. Benson or contracted for.*

"That said F. A. Hyde and J. A. Benson did on the same day assign to the undersigned their claim and right to any moneys that may be or become due to said Hyde or both of them by reason of any *contract for any services heretofore indicated.*"

Also of importance is the fact that plaintiff made no attempt to prove that the holders of the certificates had ever been paid for the certificates by Benson or any of Benson's assigns or to introduce any contract between Benson and the holders of the certificates showing the purchase price arranged for by Benson.

Plaintiff raises the point that it is unreasonable to assume that the vendors of the land would have been willing to consent to postpone the date of payment as long as was done in this case. Plaintiff should have produced evidence of that to which the vendors did consent; furthermore, at the time the sale was made there was every reason to believe that in this case, as formerly, the lands would be listed and patented within a few months, so that the date of final payment was apparently not far removed. Plaintiff also contends that no lien has been asserted by the vendors since the sale of 1902, and that this is evidence tending to show that no lien existed. In the first place, the record does not show that no claim or lien has been asserted by the vendors; in the second place, the right to assert such liens did not arise until 1917, when the lands were listed and patented,

which was shortly before the commencement of the present action.

[3]  Plaintiff's contention that Walker was estopped from claiming that Benson was a depositary by failing to object when notice of Benson's assignments to Hyde and Clarke were served on him in 1903 is without merit. Even if failure to object would amount to an estoppel under some circumstances, it has no such effect in the instant case for the reason that the notice contained in the statement that the assignments were made of moneys due or that might become due "on account of any services heretofore rendered by said J. A. Benson." According to the contract, if the cost of the land were less than $3.75 per acre, Benson, or his assigns, could claim the difference as compensation. It follows that Walker was in no position to object to the assignment and, therefore, cannot be estopped by his failure to do so.

The view we have taken of the main issue in the case renders it unnecessary to discuss the remaining questions presented by the briefs.

Judgment reversed.

Lawlor, J., Wilbur, J., and Sloane, J., concurred.

Shaw, C. J., dissented.

Mr. Justice Shurtleff, being disqualified, did not participate herein.

Rehearing denied.

All the Justices concurred, except Shaw, C. J., who dissented.